IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARK LEVY,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:24-cv-3580-RDB |
| **HOWARD COUNTY, MARYLAND,** *et al.* | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Mark Levy's Emergency Motion for Protective Order related to an upcoming independent medical examination (the "IME Motion") and Motion to Seal. (ECF 35, 37.) Levy filed the IME Motion under seal on November 7, about two weeks before the relevant examination is scheduled to begin on November 20. On November 14, he filed the Motion to Seal. I have considered the motions and their attachments. The time to respond has not passed, *see* Loc. R. 105.2 (D. Md. 2025), and there has been no response to date.[1] No hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, the Court DENIES the IME Motion and GRANTS IN PART and DENIES IN PART the Motion to Seal.

---

[1] Absent a court order providing otherwise, a party may respond within fourteen (14) days of being served with any motion. Loc. R. 105.2. Thus, the response to the IME Motion is not due before the IME will begin. The deadline for responding to the Motion to Seal falls after the examination will conclude. In lieu of ordering responses on a shorter timeframe, for the reasons stated below, the Court is comfortable ruling on the Motion without Defendants' formal responses.

I.  **BACKGROUND**

Plaintiff Mark Levy contends that Defendants Howard County, Maryland and Howard County Fire and Rescue ("Howard County") engaged in discrimination, harassment, and retaliation based on his alleged disabilities, all in violation of the federal Americans with Disability Act ("ADA") and the analogous Maryland state law.[2] (*See generally* Compl., ECF 2.)  Relevant to the discovery issue raised in the IME Motion, Levy contends that he is a qualified individual as defined by the ADA due to a "mental health disability," specifically, anxiety and depression with which he has lived since 2002. (Compl. at ¶ 18.)  Among other things, Howard County disagrees that Levy is a qualified individual.  (Answer at 3-4, ECF 10.)

As part of discovery, Howard County seeks to undertake an independent medical examination (IME) of Levy.  On September 18, 2025, the Court held a telephone conference with the parties regarding discovery disputes, including some concerning the IME.  (*See* Letter Order, ECF 30 at 1-2.)  After hearing from the parties regarding the potential duration of the IME and any burden suffered by such an examination, the Court expressly declined to rule on the issue; the Court directed the parties to confer further and advise in a status report whether there remained a need for Court intervention regarding the "time, duration, burden, proportionality," and any other issue relevant to the IME. (*Id.* at 3.)  The parties filed the requested report and advised they resolved the dispute. (ECF 31 at 1.)

---

[2] Levy has filed a motion to amend the Complaint; the proposed amendment adds a claim pursuant to the federal Declaratory Judgment Act. (ECF 21.) Because that amendment has not yet been granted and, in any event, would not alter any matter relevant to this discovery issue, the Court draws upon the original, operative Complaint and Answer for any factual allegations or disputes.

Despite the previous representation that the parties resolved the IME issue, Levy now moves for Court intervention in the form of a protective order that (1) limits the two-day IME to no more than five hours each day (for a total maximum of ten hours), notwithstanding Howard County's advisement that the IME could take up to six hours per day, and (2) permits an audio recording of the entire IME. (IME Mot. at 4-7.)

## II.     LEGAL STANDARD

"District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).  Federal Rule of Civil Procedure 26(c)(1) enables courts to issue orders that limit discovery to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Also relevant here, Federal Rule of Civil Procedure 35 provides that if a party's mental or physical condition is in controversy, a party may be ordered to endure a physical or mental examination, but only upon a motion for good cause and notice to all parties and the person to be examined. Fed. R. Civ. P. 35(a).

## III.    ANALYSIS

For the reasons stated below, the Court denies the IME Motion. Levy falls short of his burden to show good cause in support of the requested relief. In short, the record does not support the requested time limitation, and the Court joins others that refuse to authorize recording of an IME absent special circumstances, which do not appear here. The Court grants the Motion to Seal only in part and, thus, will seal the attachment to the IME Motion; the IME Motion itself will not be sealed.

> **A. Plaintiff fails to demonstrate circumstances establishing good cause to limit and record the IME.**

In determining whether to enter a protective order, the Court examines whether the proponent establishes good cause for such an order. Fed. R. Civ. P. 26(c)(1); *Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 278 (D. Md. 2012). Good cause requires specific factual articulation, not broad and conclusory statements. *Webb*, 283 F.R.D. at 279. This is "a rather high hurdle." *Id.* (internal quotation marks and citation omitted).

> *1. The Court will not limit the IME duration.*

Levy's request is, in essence, a relatively brief reduction of the IME's length, from a twelve-hour maximum to a ten-hour maximum. The IME Motion provides little on how this two-hour change is material within the context of the allegations and proposed examination. During the September teleconference, plaintiff's counsel articulated the objection to the IME occurring across a two-day period and sought either a limitation to one day or an order requiring Howard County to take certain measures with respect to scheduling a two-day IME. *See* ECF 30 at 3. As previously recounted by the Court, "Plaintiff's counsel cited an unawareness of the total duration of Defendants' proposed IME (10 total hours across two days) and the fact that the proposed examiner will travel from Chicago, and defense counsel expressed surprise that plaintiff's counsel objected to a two-day IME." *Id.* While it inquired why ten hours was necessary for this examination, the Court did not find one way or the other whether that duration was appropriate within the context of the claims, defenses, and circumstances here. To the contrary, in lieu of hearing further from the parties on the conference call, the Court noted that the matter "would benefit from additional discussion before Court intervention." *Id.* Thus, the Court disagrees with Plaintiff's assertion that it already deemed any duration unreasonable. The

4

record now is much the same, except that the proposed two-day duration is a maximum of twelve rather than ten hours.

Levy's good cause appears to be the general assertion than "[a] longer examination would impose undue psychological and physical strain, particularly because Plaintiff will be examined immediately following a 24-hour firefighter/paramedic shift, during which he will have been on continuous duty." IME Mot. at 2. While it may be true that a lengthy two-day examination after this shift is burdensome, the question is whether such burden is *undue* and whether there is good cause to impose the requested limitation.

In general, courts do not limit the duration of a Rule 35 psychological examination. *See Robinson v. De Niro*, 600 F. Supp. 3d 286, 291-92 (S.D.N.Y. 2022); *Snipes v. United States*, 334 F.R.D. 667, 672-73 (N.D. Cal. 2020). This hesitation arises from the desire to avoid "subvert[ing] the truth finding function inherent in Rule 35 examinations." *Abdulwali v. Wash. Metro Area Transit Auth.*, 193 F.R.D. 10, 15 (D.D.C. 2000); *Fiello v. Daimler Trucks N. Am. LLC*, No. 20-cv-182, 2021 WL 1381131, at *6 (M.D.N.C. Apr. 12, 2021) (same). Therefore, absent good cause, "courts refrain from limit[ing] the manner in which an examination is conducted or the questions asked." *Tarte v. United States*, 249 F.R.D. 856, 860 (S.D. Fla. 2008) (internal quotation marks and citation omitted) (alteration in original). This does not mean that courts bless open-ended examinations of unlimited length. But where an examiner proposes a duration and the examinee seeks more restrictive conditions, courts hesitate to impose an artificial endpoint contrary to the examiner's expertise absent a showing the examination or procedures are somehow improper. As a result, courts often decline to limit the examination to a duration shorter than the examiner's estimate. *See Taylor v. NBIS Construction & Transport Serv.*, No. 22-cv-767, 2023 WL 7413482, at *2-3 (W.D. La. Nov. 9, 2023) (rejecting request to limit

proposed eight-hour examination to only three hours where plaintiff argued that eight-hour psychiatric examination would be "excessive" and "disproportionate to the approximately one-hour examination" performed by a different doctor); *Fiello*, 2021 WL 1381131, at *6-7 (declining to impose eight-hour limit where examining party argued that eight hours was the usual duration but the necessary length varied based on the examinee's performance and complexity of the case).[3] This is true even where, as here, the movant argues that the examiner's inquires may cover ground explored through other discovery or examination. *See De Niro*, 600 F. Supp. 3d at 292 (relying on the "professional estimate that up to eight hours may be needed to conduct an exam," notwithstanding plaintiff's insistence that "she already sat for two depositions"); *Taylor*, 2023 WL 7413482, at *2-3.

Courts have found examinations exceeding eight hours, and even up to twelve across two days, appropriate in certain instances. *See Jimerson v. Ford*, No. 20-cv-1145, 2024 WL 4108340, at *3 (E.D. Ark. Sept. 6, 2024) ("In some instances, a Rule 35 exam may last eight hours or more."); *Stillman v. Wal Mart Stores East I, LP*, No. 19-cv-222, 2019 WL 11851712, at *2 (W.D. Mo. Dec. 3, 2019) (permitting twelve and half hours of examination across two days); *Nicholas v. Wyndham Int'l, Inc.*, 218 F.R.D. 122, 124 (D.V.I. 2003) (affirming imposition of thirteen-hour limit on Rule 35 examinations). Considering that Levy agrees to ten hours—and thus the parties are disputing only two hours of examination time—the Court will not impose the requested limit. *See Stillman*,

---

[3] The Court does not suggest that examiners enjoy carte blanche to design and administer testing. For example, questions about health conditions or other matters wholly unrelated to the allegations may be improper. *See, e.g.*, *Shannon v. Ellis*, No. 18-cv-506-JAR, 2018 WL 4698783, at *3 (E.D. Mo. Oct. 1, 2018); *Shadix-Marasco v. Austin Regional Clinic P.A.*, No. A-09-CA-891 LY, 2011 WL 2011483, at *5-6 (W.D. Tex. May 20, 2011).

2019 WL 11851712, at *2 (noting that parties disputed three-and-one-half hours of testing time and finding reasonable the allowance of the extra time to ensure completion of the examination). Like in *Stillman*, the Court finds that permitting the additional hour per day, if necessary, may ensure completion without follow-up requests for additional time. The Court expects that if six hours on either day is not necessary, the examiner will not unduly and inappropriately prolong the IME beyond the time required to complete the task. *See id.* ("With that said, 'the court expects the examiner will act professionally and not subject the examinee to unnecessary inquiries." (quoting *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 168 (N.D. Cal. 2013) (brackets omitted)).

In a curious move, the Motion cites a District of Kansas case in support of its proposed limitation. IME Mot. at 4 (citing *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 628 (D. Kan. 1999)). But *Hertenstein* offers Levy no assistance on any level. The court rejected the plaintiff's proposed limitations on the IME, which included "breaks on demand" during the IME (and, as discussed below, presence of a third party or recording device). *Hertenstein*, 189 F.R.D. at 624-28. The only discussion of duration occurred within the context of the plaintiff's request to "take breaks whenever she feels the need"; the court rejected such a request because the IME would last for only two hours. *Id.* at 625. *Hertenstein* does not inform the requested limitation to 10 hours and provides no support for imposing any limitation Levy seeks.

  *2. The Court denies the request for an audio recording of the IME.*

Absent compelling circumstances constituting "good cause," the majority of courts disallow recording devices during Rule 35 exams. *See Lynch v. Tribe Express, Inc.*, No. 24-cv-826, 2025 WL 1829921, at *5 (E.D. Va. July 2, 2025) (collecting cases); *Morrison v. Stephenson*, 244 F.R.D. 405, 406 (S.D. Ohio 2007). Such compelling circumstances

7

have included language or other comprehension challenges as well as concerns about the examinee's memory or intentional manipulation. *See Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011) (permitting recording where plaintiff had "low average" IQ, limited reading and vocabulary skills, and a "lengthy history of serious mental issues" that, defendant believed, motivated plaintiff to manipulate the examination); *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 14 (E.D.N.Y. 1989) (permitting the presence of a court reporter at a psychiatric examination because the plaintiff was "not well educated, and more importantly, ha[d] difficulty with the English language"). Some courts also find good cause where the proposed examiner may use "potentially harmful or unorthodox techniques." *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 556 (D. Conn. 2006). Courts following this majority approach reason, among other things, that the presence of a recording device "impede[s] one-on one communication between the patient and the psychologist and tend[s] to undermine the psychologist's [evaluation] technique." *De Niro*, 600 F. Supp. 3d at 292 (collecting cases) (last alteration in original); *accord Holland v. United States*, 182 F.R.D. 493, 495-96 (D.S.C. 1998); *Aubuchon v. Tate Trucking, LLC*, No. 24-cv-189-HEA, 2025 WL 3012997, at *2-3 (E.D. Mo. Oct. 28, 2025). While Plaintiff does not cite such authority (and, as discussed below, relies on authority undermining his request), some courts permit recordings even absent special circumstances. *See, e.g., Wright v. Hobby Lobby Stores, Inc.*, 344 F.R.D. 538, 543-46 (D. Colo. 2023); *Brewer v. Norfolk S. Rwy. Co.*, No. 21-cv-241-MLB, 2023 WL 1529382, at *2 (N.D. Ga. Feb. 3, 2023). There is no binding Fourth Circuit authority on this issue.

The Court agrees that the proper approach is a case-by-case assessment in search of "good cause," rather than a presumption one way or the other. *See Morrison*, 244

8

F.R.D. 406-07; *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994). At the end of the day, the Court finds that Levy offers no compelling or special circumstance establishing good cause for a recording. He implies that the examiner, Dr. Lawson, may be untrustworthy, biased, and liable to distort Levy's statements and/or the medical findings, on the basis that a prior IME conducted by Dr. DeBernardo was distorted. IME Mot. at 2-3, 5-6; *see also* Compl. ¶¶ 59-62, 126, 129 (alleging Dr. DeBernardo's performance of a 2022 IME and failure to speak to the need for a reasonable accommodation). The Court agrees with those opinions resistant to recordings on this basis. *See Aubuchon*, 2025 WL 3012997, at *2-3 (E.D. Mo. Oct. 28, 2025) (denying motion seeking audio recording and finding that plaintiff's desire to "preserve a true and accurate record of the information exchange," without more, did not constitute good cause). As noted by another court in the Fourth Circuit, "the potential for bias exists in virtually every case, and courts have declined to permit recordings on that basis alone." *Fiello*, 2021 WL 1381131, at *4 (finding no good cause for audio recording where plaintiff cited the examiner's status as an adversary); *accord Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, 258 F.R.D. 523, 529–30 (S.D. Fla. 2009) ("Defendant argues that videotaping the IME will avoid discrepancies that may arise over statements made by Plaintiff during the examination in response to the examining physician's inquiries and reduce the prospective need for court intervention. But this would be true for any IME. Yet, videotaping is not typically necessary or proper." (internal quotation marks and citations omitted)); *but see, e.g.*, *Brewer*, 2023 WL 1529382, at *2-3.

The Court finds nothing in the language of Rules 26 and 35 suggesting routine recording of examinations. Therefore, good cause requires more than what Levy offers here. *See Morrison*, 244 F.R.D. at 408. The Court declines to find "good cause" satisfied

by reasoning that would apply to every litigation and, by extension, make recording the default in any Rule 35 examination. If a plaintiff disputes the accuracy of the defense examiner's recounting of what occurred during the examination or opinions, the adversarial process provides a means to address that dispute: cross-examination, during which bias is always an appropriate—if not primary—subject. *United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017) ("Exploring bias is a proper topic for cross-examination[.]" (citation omitted)); *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 801 (D. Md. 2022) ("[G]enerally, the traditional and appropriate means of challenging expert testimony are vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." (internal quotation marks and citations omitted)).

In this case, Levy attempts to present more than the theoretical possibility of bias; he offers examples based on Dr. DeBernardo's previous IME on behalf of Howard County as a way of suggesting what Dr. Lawson may do. The IME Motion lists disagreements with Dr. DeBernardo's previous findings and contends that such findings contradict matters that are "well documented in medical records[.]" IME Mot. at 5-7. However, that does not move the needle for the Court. The IME Motion provides no basis to superimpose these alleged contradictions on Dr. Lawson. Beyond that, this argument bears no material difference—for the purpose of this request—from any other case where a party employs an expert who testifies often for plaintiffs or for defendants; the parties would explore the same issues concerning credibility and bias of an individual who performs, for example, 90% of their work for one side.

Moreover, the Court finds no good cause for a recording when plaintiff's counsel already identifies—even before the examination—documents that enable their challenge to bias of previous, and maybe future, summaries and conclusions. The factfinder may

10

assess credibility upon the appropriate time for examining a witness's veracity. *See Morrison*, 244 F.R.D. at 408 (noting the adequate remedies for improper examination to include deposing the examiner or "cross examination at trial to point out the prejudice"); *Favale*, 235 F.R.D. at 557 (explaining, where plaintiff argued that the examiner "would not be truly 'independent'," that "[j]ust as the defendant has deposed plaintiff's treating therapist, plaintiff is free to depose Dr. Borden or to call him as a witness at trial and bring this relationship to the jury's attention"); *cf. Tellis v. LeBlanc*, No. 18-cv-541, 2019 WL 5268685, at *3 (W.D. La. Oct. 17, 2019) ("Any perceived problems with the [Rule 35] examinations due to lack of independence or impartiality of the evaluators can be raised by Plaintiffs after the examinations and evaluated by the court prior to use of the examinations in court."). In general, demonstrating potential bias or misrepresentation of an expert or medical opinion does not require recording unsworn statements. Even if it may be useful in certain circumstances, these circumstances—where the movant already documents the alleged bias before the IME—fall short of good cause.

On a final note, the Court again flags the misrepresentation of Levy's cited authorities. The IME Motion insists that *Calderon* permitted a recording during a psychiatric IME and thus supports Levy's assertion that "[c]ourts routinely authorize such recordings when fairness and accuracy are at issue." IME Mot. at 4. But *Calderon* did the exact opposite: the court did "*not* find good cause to videotape the examination," despite the defendant's desire to record its examination of the plaintiff to preserve a record of their statements. 258 F.R.D. at 529–30 (emphasis added). *Hertenstein*, which Levy cites in support of his proposed duration limitation, rejected an audio recording despite the examinee's contention that the examiner was "not neutral" due to being engaged by the defendant. 189 F.R.D. at 628-31. What concerns this Court is not that it

11

disagrees with the Motion's requests and arguments,[4] but that the description of the cases runs directly opposite to the language and findings of those opinions.

### B. The Court grants the Motion to Seal in part.

Levy moves to seal the IME Motion and exhibit, contending that they "contain and reference confidential and sensitive information pertaining to private personnel records, medical information, and/or personally identifying details not appropriate for the public docket." ECF 37 at 1. In conclusory fashion, he argues that sealing is necessary and that his privacy concerns outweigh the public interest in access to judicial records. *Id.* The Court agrees regarding Exhibit A, which contains clinical assessments and findings, and disagrees regarding the IME Motion itself.

The public enjoys the right to access the courts and court records. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). This core right "springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* "[T]he strength of the right of access varies depending on whether the public's right of access to the document or proceeding derives from the common law or the First Amendment." *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020). Under the common law, the "presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988). "Under the First Amendment, on

---

[4] The IME Motion also cites the *Di Bari* decision on this point. IME Mot. at 4. As noted earlier, *Di Bari* involved the compelling reason of the examinee's language and comprehension challenges. 126 F.R.D. at 14. To the extent that "fairness and accuracy [were] at issue" in *Di Bari*, as Plaintiff argues, that concern stemmed from the examinee's difficulties communicating with his counsel, not from a general interest in recording the examiner's conduct. *See Hertenstein*, 189 F.R.D. at 629 (rejecting plaintiff's reliance on *Di Bari*).

the other hand, the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Id.* (collecting cases). Thus, the "public's right to access documents under the First Amendment is narrower in scope but stronger in force." *Doe*, 962 F.3d at 145.

Considering these time-honored traditions, the Court presumes public access to court records, *Ashcroft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000), and requires a significant showing to displace it, *see Rushford*, 846 F.2d at 253. "Before a district court seals any court document, it 'must consider alternatives to sealing . . . which may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the . . . motion to seal.'" *Simpson v. Technology Serv. Corp.*, No. 14-1968-DKC, 2015 WL 6447253, at *4 (D. Md. Oct. 22, 2015) (quoting *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005)). The Court's Local Rules reflect this process, requiring that "[a]ny motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11.

Plaintiff fails to satisfy either the common law or First Amendment standard with respect to the IME Motion. The Motion to Seal lacks specific factual representations explaining why alternatives to sealing—such as redactions of any medical or sensitive information that has not already been referenced in public filings—would not provide sufficient protection with respect to the IME Motion. The Court concludes that careful redactions provide a reasonable and sufficient alternative.

In general, "[i]f the request is narrowly tailored, sensitive medical information may be sealed." *Boone v. Bd. of Governors of Univ. of N.C.*, 395 F. Supp. 3d 657, 665 (M.D.N.C. 2019) (internal quotation marks and citation omitted); *see also Rock v. McHugh*, 819 F. Supp. 2d 456, 475-76 (D. Md. 2011) (sealing certain filings that discuss medical conditions and treatments "in some detail" but finding that other aspects of the sealing request were "too broad"). The IME Motion discusses how long Levy has lived with anxiety and depression, their related symptoms, their effect on his working in a high-stress environment, and the potential interaction between those effects and the IME. But these matters, which lie at the heart of Levy's claims, already appear in the Complaint for the public to see. *See* Compl., at ¶¶ 18-22, 54, 56, 65. Therefore, the Court will not seal the IME Motion based on its mention of matters that are already alleged in unsealed documents. *See CX Reinsurance Co. Ltd. v. City Homes, Inc.*, No. 17-1476-JKB, 2018 WL 5080944, at *6 (D. Md. Oct. 18, 2018) (denying motions to seal documents in their entirety where "a significant portion of the contents consists of rehashing and summarizing public filings"). Also, the IME Motion focuses mostly on an appropriate length of the IME and the perceived fairness of an audio recording. These topics do not involve extensive discussion of medical or otherwise sensitive information beyond what appears in other public filings. *See id.*; *cf. Boone*, 395 F. Supp. 3d at 665 (noting that not all documents mentioning medical information require sealing or redaction).

There are two pages summarizing (and disagreeing with) Dr. DeBernardo's prior findings regarding Levy. The Court does not find such discussion delves much, if at all, into matters not otherwise referenced in the Complaint or the Defendants' Answer. *See, e.g.*, Compl. at ¶¶ 59-62 (discussing Dr. DeBernardo's 2022 IME of Levy and conclusion that he could perform the essential functions of his employment). To the extent that some

14

portion of pages 5 and 6 of the IME Motion includes information that is both medical or otherwise sensitive *and* not already disclosed in public filings, redaction strikes the proper balance between the public's presumptive access and Levy's interests. *CX Reinsurance*, 2018 WL 5080944, at *6 (finding "very little information in any of the filings of a protected nature" and ordering redactions rather than sealing); *see also Rock*, 819 F. Supp. 2d at 476-77 (refusing to seal exhibits that either do not reference sensitive medical information or redact sensitive information).

The Motion to Seal mentions a stipulated protective and confidentiality order governing discovery. ECF 37 at 1; *see* ECF 25 (Stipulated Protective Order). This statement, which does not accompany any specific analysis or application, appears designed to imply that the protective order satisfies Levy's burden. That would be incorrect. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 576 n.18 (D. Md. 2012) ("In their motion to seal, Plaintiffs state only that they seek to seal the exhibits pursuant to the confidentiality order, an explanation insufficient to satisfy the 'specific factual representations' that Local Rule 105.11 requires.") (quoting *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 455 F. Supp. 2d. 399, 438 (D. Md. 2006)); *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, No. JKB-22-2636, 2023 WL 3549829, at *1 (D. Md. May 18, 2023) (denying motion to seal without prejudice where plaintiffs sought to "seal the entirety of several documents due to the existence of a confidentiality order[,]" finding this request "overbroad" because plaintiffs did "not explain why an alternative, such as redacting portions of the documents, does not provide sufficient protection"); *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2015 WL 13612172, at *1 (D. Md. Mar. 19, 2015) (denying motion to seal without prejudice where the parties' motion contained "only boilerplate recitations" related to the court's granting of a Stipulated Order Regarding

Confidentiality of Discovery Material, finding that "[t]he parties ha[d] made no attempt to redact portions of the filings as opposed to sealing the documents in their entirety"); *Under Armour, Inc. v. Body Armor Nutrition, LLC*, No. JKB-12-1283, 2013 WL 5375444, at *9 (D. Md. Aug. 23, 2013) (denying motions to seal where "[t]he parties . . . provided only the barest support for the motions to seal, usually relying on the protective order issued in th[e] case" and failed to "provide 'specific factual representations' to justify their arguments"); *see also Rushford*, 846 F.2d at 254 ("The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents."). Accordingly, Levy does not meet his burden to seal the IME Motion.

Exhibit A to the IME Motion presents a different story. *See* ECF 35-1. Being nine pages of Dr. DeBernardo's clinical notes and evaluation of Levy from 2022, the exhibit's non-public, medical, and sensitive nature is apparent. *See, e.g.*, *Smith v. Montgomery Cnty., Md.*, No. 17-cv-3122-PWG, 2019 WL 1130156, at *8 (D. Md. Mar. 12, 2019) (granting in part motion to seal and sealing psychological evaluations). While the Court noted above that certain medical information appears in public filings, Exhibit A reflects breadth and detail far greater than the pleadings. *See Rock*, 819 F. Supp. 2d at 475-76. Therefore, the Court will seal Exhibit A to the IME Motion.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Motion for Protective Order (ECF 35), and grants in part and denies in part the Motion to Seal (ECF 37). Exhibit A to the Motion for Protective Order (ECF 35-1) shall be sealed. The remainder of the Motion to Seal is denied. Within seven days, the IME Motion shall be re-filed as an unsealed document *or* re-filed with proposed redactions, in accordance with the Local Rules. A separate, implementing order consistent with this opinion shall issue.

Date: November 19, 2025

/S/
Charles D. Austin
United States Magistrate Judge